IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                  CRIMINAL NO. 1:18CR1-1
                                                (Judge Keeley)

FELIX A. BRIZUELA, JR.,

        Defendant.

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]**

On October 28, 2019, the defendant, Felix A. Brizuela, Jr. ("Brizuela"), moved for release on bond pending appeal of his conviction and sentence (Dkt. No. 410). Because he is currently scheduled to report to the Bureau of Prisons to begin serving his sentence on November 2, 2019 (Dkt. No. 384), the Court directed the Government to respond to the motion by October 30, 2019 (Dkt. No. 413). Brizuela filed his reply the next day (Dkt. No. 425). After careful review of the parties' arguments, the Court finds that Brizuela has failed to satisfy the requirements of 18 U.S.C. § 3145(c) and **DENIES** his motion (Dkt. No. 410).

## I. BACKGROUND

On January 14, 2017, a jury convicted Brizuela of 15 counts of distribution of controlled substances outside the bounds of professional medical practice in violation of 21 U.S.C.

§§ 841(a)(1) and 841(b)(1)(C) (Dkt. Nos. 161, 163).[1] On September 3, 2019, the Court sentenced him to 48 months of imprisonment followed by 3 years of supervised release as to all 15 counts, those sentences to be served concurrently (Dkt. Nos. 380, 384). Brizuela timely filed his notice of appeal later that same day (Dkt. No. 386).

## II. LEGAL STANDARD

Under 18 U.S.C. § 3145(c), a defendant subject to detention under § 3143(b)(2) may be released during the pendency of his appeal if (1) he satisfies the conditions of § 3143(b)(1) and (2) "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."

Under 18 U.S.C. § 3143(b)(1), a defendant "who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . ," shall be detained, unless the court finds (A) by clear and convincing evidence that the defendant

---

[1] More specifically, a jury found Brizuela guilty of Counts Two through Six, Eleven through Nineteen, and Twenty-One of the Indictment (Dkt. Nos. 161, 163). It found him not guilty of Counts One, Seven through Ten, Twenty, and Thirty-Five through Fifty. Id. Later, the Government voluntarily dismissed Count Twenty-Two of the Indictment without prejudice pursuant to a tolling agreement (Dkt. Nos. 287, 296).

<u>**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]**</u>

does not pose a flight risk or a danger to the community if

released, and

> (B)   that the appeal is not for the purpose of
>        delay and raises a substantial question of
>        law or fact likely to result in--
>
>        (I)      reversal,
>        (ii)     an order for a new trial,
>        (iii)    a sentence that does not
>                 include a term of imprisonment,
>                 or
>        (iv)     a reduced sentence to a term of
>                 imprisonment less than the
>                 total of the time already
>                 served plus the expected
>                 duration of the appeal process.

In the Fourth Circuit, a "substantial question of law or fact" is

one that presents a "'close question or one that very well could be

decided the other way.'" <u>United States v. Steinhorn</u>, 927 F.2d 195,

196 (4th Cir. 1991) (quoting <u>United States v. Giancola</u>, 754 F.2d

898, 901 (11th Cir. 1985) (internal quotation marks omitted)).

### <u>III. DISCUSSION</u>

Brizuela contends that (1) there are exceptional reasons that

warrant his release, (2) he is not a flight risk or danger to the

community, and (3) his appeal raises substantial questions of law

and fact that likely will require a new trial (Dkt. No. 411 at 3-

13). Because exceptional reasons do not warrant his continued

release, and because his appeal does not raise a substantial

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]**

question of law or fact, the Court concludes that Brizuela has

failed to satisfy the requirements of § 3145(c).

**A.   There are no "exceptional reasons" warranting Brizuela's
     release pending the outcome of his appeal.**

Section 3145(c) provides, in relevant part, as follows:

> A person subject to detention pursuant to
> section 3143(a)(2) or (b)(2), <u>and who meets
> the conditions of release set forth in section
> 3143(a)(1) or (b)(1)</u>, may be ordered released,
> under appropriate conditions, by the judicial
> officer, <u>if it is clearly shown that there are
> exceptional reasons why such person's
> detention would not be appropriate</u>.[2]

18 U.S.C. § 3145(c) (emphasis added) (footnote added). Thus,

Congress has limited relief under § 3145(c) to defendants who (1)

are subject to detention under §§ 3143(a)(2) or (b)(2); (2) meet

the conditions of §§ 3143(a)(1) or (b)(1); <u>and</u> (3) clearly show

that exceptional reasons exist warranting their release on appeal.

<u>Id.</u>

Here, Brizuela is subject to mandatory detention under

§ 3143(b)(2) because he has been found guilty of a controlled

substances offense described in subparagraph 18 U.S.C.

---

[2] Although § 3145(c) generally governs appeals to a circuit court,
the United States Court of Appeals for the Fourth Circuit has
previously concluded "that district judges unambiguously qualify as
'judicial officers' under § 3145(c)." <u>United States v. Goforth</u>, 546
F.3d 712, 715 (4th Cir. 2008).

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]

§ 3142(f)(1)(C) (Dkt. No. 163), has been sentenced to a term of imprisonment (Dkt. No. 384), and has filed an appeal (Dkt. No. 386). 18 U.S.C. § 3143(b)(2). Therefore, he may only be released under § 3145(c) if he satisfies the conditions of § 3143(b)(1) and "it is clearly shown that there are exceptional reasons why [his] detention would not be appropriate." 18 U.S.C. § 3145(c); see also United States v. Cropper, 361 F. Supp. 3d 1236, 1243 (N.D. Ala. 2019) (listing three elements of § 3145(c)).

Brizuela posits that he meets the "exceptional reasons" condition because he needs elbow and knee surgeries and is the primary caregiver for his autistic son (Dkt. No. 411 at 3-6). Although the Fourth Circuit has not yet considered what constitutes "exceptional reasons" under § 3145(c), other "[c]ourts generally have defined 'exceptional reasons' as circumstances which are 'clearly out of the ordinary, uncommon, or rare.'" United States v. Vilaiphone, No. 3:08cr232, 2009 WL 412958, at *2 (W.D.N.C. Feb. 18, 2009) (quoting United States v. Larue, 478 F.3d 924, 925 (8th Cir. 2007)) (citing United States v. Lea, 360 F.3d 401, 403 (2d Cir. 2004)).

"[W]hile the Court is cognizant of the hardships that [Brizuela]'s detention will create for [him and] his immediate family, such hardships are common to nearly every case involving a

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]**

term of imprisonment and thus do not qualify as 'exceptional reasons' under § 3145(c)." <u>Vilaiphone</u>, 2009 WL 412958, at *2 (citing <u>United States v. Garcia</u>, 340 F.3d 1013, 1022 (9th Cir. 2003) ("Hardships that commonly result from imprisonment do not meet the standard.")); <u>see also</u> <u>United United States v. Tobacco</u>, 150 F. Supp. 3d 1051, 1054 (D.S.D. 2015) ("Personal reasons, such as caring for family members, being gainfully employed, and caring for young children with unique health problems are not extraordinary reasons."); <u>States v. Sabhnani</u>, 529 F. Supp. 2d 377, 382 (E.D.N.Y. 2007) ("Incarceration always is associated with severe familial inconvenience.").

Unfortunately, many families grapple with difficult childcare issues and financial circumstances when a parent is incarcerated. <u>Cf.</u> <u>United States v. Rodriguez</u>, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999) (concluding financial family hardship was not an exceptional reason under § 3145(c)). Similarly, many defendants require medical treatment during the course of their incarceration. The need for surgery thus is not exceptional. <u>See</u> <u>Rodriguez</u>, 50 F. Supp. 2d at 722 (concluding that the need for medical attention was not an exceptional reason under § 3145(c)); <u>United States v. Carlson</u>, No. CR17-5188RBL, 2019 WL 2140582, at *3 (W.D. Wash. May 16, 2019) (concluding that the defendant's health, including his need for hip

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]**

replacement surgery, was not an exceptional reason under § 3145(c)).

This is especially so where, as here, Brizuela's surgeries have not been scheduled and, based on the filings supporting his motion, apparently cannot be scheduled until, at the earliest, sometime in 2020 (Dkt. No. 411 at 3-4). Moreover, as the Government correctly pointed out in its response (Dkt. No. 424 at 1-2), the Court explicitly took Brizuela's health and serious family circumstances into account when it varied to a sentence of 48 months of imprisonment, a significant downward variance from his applicable guideline range of 78 to 97 months (Dkt. Nos. 380, 384, 385). It did so after considering Brizuela's health and family circumstances and concluding that they did not outweigh the need for a sentence of incarceration in this case (Dkt. No. 423 at 34-39).

Brizuela insists that his health has changed since his sentencing in September, and that the Court did not previously consider his health in the context of a motion for bond pending appeal (Dkt. No. 425 at 1-2). Now, he "imminently requires surgery to avoid increasing and lasting damage to his elbow and leg." Id. at 2. But this change does not make Brizuela's needs exceptional. Regardless of whether he begins serving his sentence, or is on bond

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]

pending appeal, Brizuela cannot schedule his surgeries until, at the earliest, sometime in 2020. The only question is whether the BOP can provide that care when, and if, his heart is strong enough for surgery. Although Brizuela questions the BOP's capacity (Dkt. No. 411 at 4 n.2), he does not argue, nor has he established, that the BOP cannot provide him with the necessary medical care while incarcerated.

In conclusion, Brizuela has failed to clearly show that "exceptional reasons" exist that warrant his release on bond pending appeal. 18 U.S.C. § 3145(c).

**B.   Brizuela's appeal does not present substantial questions of law or fact.**

Even had Brizuela established exceptional reasons under § 3145(c), he is nevertheless not entitled to remain on bond pending his appeal because, although he is not a flight risk or a danger to the community, his appeal does not present a substantial question of law or fact under § 3143(b)(1). 18 U.S.C. § 3145(c).

**1.   The Court did not err by prohibiting Brizuela from testifying as his own expert witness.**

Brizuela contends "that he was improperly denied the right to testify as an expert on medical issues relevant to neurology, given his years of medical expertise in that precise area" (Dkt. No. 411 at 7). He contends this is a substantial question of law because,

## MEMORANDUM OPINION AND ORDER DENYING
### DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]

if the Fourth Circuit accepts his contention, it will reverse his convictions and order a new trial. Id. at 8-9. This claim is unavailing for three reasons.

In the first place, Brizuela does not have a right, constitutional or otherwise, to testify as an expert witness in his own criminal case. Tellingly, he has not cited——nor has this Court found——any case where, in similar circumstances, a defendant was permitted to testify as an expert witness in his own defense. His argument, although novel, does not raise a "'close question or one that very well could be decided the other way.'" Steinhorn, 927 F.2d at 196 (quoting Giancola, 754 F.2d at 901).

Second, Brizuela never disclosed himself as an expert or provided any written summary of his intended testimony as required under Federal Rule of Criminal Procedure 16(b)(1)(C). Indeed, the first indication that Brizuela intended to qualify himself as an expert came in the middle of his direct examination at trial (Dkt. No. 195 at 1074). This, alone, was sufficient to preclude him from testifying as an expert witness at trial. Fed. R. Crim. P. 16(d)(1)(c); United States v. Holmes, 670 F.3d 586, 598 (4th Cir. 2012) ("Under Federal Rule of Criminal Procedure 16(d)(2)(C), '[i]f a party fails to comply with this rule, the court may prohibit the party from introducing the undisclosed evidence.'").

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]

Having been surprised, the Government argued that, as an experienced neurologist, Brizuela could explain the treatment he had rendered to patients and why he did so, but he could not offer expert opinions on the ultimate issue in the case (Dkt. No. 195 at 1074-75). The Court did not allow Brizuela to offer an opinion as an expert on the ultimate issue of his guilt, but did allow him to testify, at length, about what he did and why he did it. Id. at 1075, 1075-1499. Indeed, he did so with little interruption from the Government (Dkt. Nos. 424 at 3, 195 at 1075-1499). Thus, the Court's ruling in no way limited Brizuela's ability to testify and establish his defense. Morever, it is worth noting that Brizuela only attempted to qualify himself as an expert after he had already presented the testimony of his own expert, Bruce David Nicholson, M.D., a specialist in anesthesiology and pain management (Dkt. No. 195 at 984-1075). Such an attempt was not only cumulative, but also a patent effort to bootstrap Brizuela's testimony to that of Dr. Nicholson's, offending Federal Rule of Evidence 403.

Third, allowing Brizuela to offer his own expert opinion on the ultimate issues raised by his own criminal charges would have further violated Rule 403 because any probative value would have been substantially outweighed by the danger of confusing or misleading the jury. Cf. United States ex rel. Westrick v. Second

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]**

Chance Body Armor, Inc., 293 F. Supp. 3d 77, 81 (2018) (noting that
allowing pro se parties "to serve as expert witnesses in the case
. . . would likely be 'unfairly prejudicial, misleading[,] and
confusing to the jury'").

> **2.  The Court did not err by allowing Dr. Marshalek to
> expound on his expert report at trial.**

Effectively renewing his pretrial motion to exclude (Dkt. No.
122), Brizuela next contends that the Court erred by allowing the
Government's expert, Patrick Marshalek, M.D., to testify beyond the
four corners of his expert report (Dkt. No. 411 at 9). No
substantial question of law is presented by this argument because
Dr. Marshalek's expert report satisfied the requirements of Rule
16(a)(1)(G) and Brizuela had sufficient notice of his expected
testimony.

"Rule 16 states that, at defense request, the prosecution must
disclose 'a written summary of any testimony that the government
intends to use under Rules 702, 703, or 705 of the Federal Rules of
Evidence during its case-in-chief at trial.'" United States v.
Davis, No. 4:18-cr-00011, 2019 WL 4306971, at *7 (W.D. Va. Set. 11,
2019) (quoting Fed. R. Crim. P. 16(a)(1)(G)). "This written summary
'must describe the witness's opinions, the bases and reasons for
those opinions, and the witness's qualifications.'" Id. (quoting

same). "'The level of detail of this summary depends on the complexity of the expert testimony.'" Id. (quoting United States v. Caputo, 382 F. Supp. 2d 1045, 1049 (N.D. Ill. 2005)). And "'[a] defendant asserting reversible error under Rule 16(a)(1)(G) must demonstrate prejudice resulting from the district court's decision to admit the contested testimony.'" United States v. Buchanan, 694 F.3d 517, 526 (8th Cir. 2010) (quoting United States v. Camacho, 555 F.3d 695, 704 (8th Cir. 2009)).

Here, Brizuela has failed to satisfy his substantial burden for four reasons. First, cases involving the distribution of controlled substances outside the bounds of professional medical practice are not so complex that they require extremely detailed expert reports. This is demonstrated by the fact that the Government need not provide expert testimony to convict a physician for practicing beyond the bounds of medical practice. See, e.g., United States v. Word, 806 F.2d 658 (6th Cir. 1986) ("[W]hile expert testimony as to 'legitimate medical purpose' and 'in the usual course of professional practice' may be helpful to a jury, there are cases in which the lay testimony is so clear that no expert testimony is required to determine that the defendant's actions were not for a legitimate medical purpose nor in the usual course of professional practice.").

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]

Second, Dr. Marshalek's expert report adequately put Brizuela
on notice of his expected testimony at trial. Brizuela's complaint
about the report has always focused on its organization. Although
it did not offer Dr. Marshalek's opinions count-by-count, the
report summarized his opinion patient-by-patient, identifying the
numerous ways in which Brizuela's treatment of each deviated from
the applicable standard of care (Dkt. No. 122-2). Tellingly,
Brizuela has not identified any trial testimony that caught him by
surprise (Dkt. No. 411).

Third, even if deficient, which it was not, Dr. Marshalek's
expert report made it abundantly clear that he would testify that
each of the charged distributions was outside the bounds of
professional medical practice. Brizuela has failed to explain how
he was prejudiced as a result. Nor could he. Moreover, any alleged
lack of clarity was cured by the Government's written response
opposing Brizuela's motion to exclude (Dkt. No. 123). See United
States v. Rivera-Rios, No. 07-417 (FAB), 2008 WL 11453684, at *1
(D.P.R. Apr. 24, 2008) (concluding that the Government's expert
witness disclosure and response opposing the defendant's motion in
limine, taken together, satisfied the requirements of Rule
16(a)(1)(G)).

<u>MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]</u>

Fourth, and most tellingly, at the December 18, 2018 final pretrial conference, the Court offered Brizuela the option to take Dr. Marshalek's deposition⸻<u>at the Government's expense</u>⸻to remedy any alleged deficiency in his expert report that had not already been cured by the Government's written response (Dkt. No. 418 at 41). Having not taken advantage of that opportunity, Brizuela cannot now claim prejudice.

3.  **The Court properly admitted evidence under Federal Rule of Evidence 404(b).**

Brizuela contends that the Court erred by admitting certain evidence at trial under Federal Rule of Evidence 404(b) (Dkt. No.424 at 7-10). This included his false statements to the West Virginia Board of Osteopathic Medicine ("WVBOM"), pre-signed prescription pads, his practice at a suboxone clinic known as Advance Healthcare Inc. ("Advance"), and information regarding patients who were not recipients of the charged distributions. <u>Id.</u> at 12. As the Government thoroughly explained in its response, these arguments do not present substantial questions of law because all of this evidence was properly admitted under <u>United States v. Kennedy</u>, 32 F.3d 876 (4th Cir. 1994) or Rule 404(b) (Dkt. No. 424 at 7-10).

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]**

In Kennedy, the Fourth Circuit concluded that evidence of a drug conspiracy that involved different people and fell outside the charged conspiracy period was not evidence of "other crimes" because it (1) constituted predicate evidence necessary to provide context and background information, and (2) served as evidence of a subset of the charged conspiracy, namely the distribution network, that helped the jury understand how the group obtained its drugs and how that group became part of the larger conspiracy. 32 F.3d at 885-86. The Fourth Circuit explained that "evidence of uncharged conduct is not considered 'other crimes' evidence if it 'arose out of the same . . . series of transactions as the charged offense, . . . or if it is necessary to complete the story of the crime on trial." Id. at 885 (citation omitted).

So too here. Brizuela's false statements to the WVBOM were admissible not only to "complete the story" under Kennedy, but also to show consciousness of guilt. See, e.g., United States v. Martindale, 790 F.2d 1129, 1132-33 (4th Cir. 1986) ("[E]xculpatory statements of the defendant, if shown to be false and fabricated, are clearly admissible to prove the defendant's guilty state of mind, and as evidence of guilt, of illicit intent and of consciousness of guilt." (cleaned up) (citations omitted)).

Likewise, evidence of Brizuela's presigned prescription pad was properly admitted as <u>Kennedy</u> evidence because, as the Government pointed out, "it demonstrated that [Brizuela] had violated federal and state regulations prohibiting the signing of blank prescriptions, something the jury could properly consider in assessing whether [] Brizuela prescribed outside the bounds of professional medical practice" (Dkt. No. 424 at 8). <u>See</u> <u>United States v. McIver</u>, 470 F.3d 550, 560 (4th Cir. 2006) (noting that violation of professional regulations could support a conviction for distributing beyond the bounds of professional medical practice). Even if not <u>Kennedy</u> evidence, this evidence was nevertheless admissible under Rule 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The same is true of evidence regarding Brizuela's medical practice at Advance. As the Government has explained in its response (Dkt. No. 424 at 8-9), this evidence was necessary to complete the story of patient N.H., who was initially treated by Brizuela for opioid use disorder at Advance. N.H. later transferred to Brizuela's pain management clinic in Morgantown, West Virginia, where the care N.H. received formed the basis for Counts Twenty and Twenty-One of the Indictment. Indeed, because Brizuela treated N.H.

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]**

at Advance between January 2013 and July 2015, before treating him at the pain management clinic in August 2015, a description of N.H.'s treatment at Advance was necessary to put the two charged distributions in August 2015 into proper context. Kennedy, 32 F.3d at 885-86. As the Fourth Circuit explained in Kennedy, "[t]o overturn the district court would prevent the prosecution from presenting to the jury the true scope and magnitude of the unlawful activities involved." 32 F.3d at 886. Moreover, even if this evidence was not admissible under Kennedy, it was nevertheless admissible under Rule 404(b).

Finally, evidence of Brizuela's treatment of other patients was likewise admissible under Kennedy "to complete the story of the crime on trial." 32 F.3d at 886. As the Government has argued, "evidence that a physician prescribed drugs to patients that the physician knew or had reason to believe would not take them as directed . . . would support a finding that the physician acted beyond the legitimate practice of medicine" (Dkt. No. 424 at 9-10). See McIver, 470 F.3d at 564 (noting, among other things, that the physician "prescribed drugs to patients that he either knew or had reason to believe would not take them as directed"). The same is true for a physician who knew or should have known that his patients were abusing or selling their prescriptions, who exercised

little oversight of his patients, and who ignored evidence of drug seeking behavior or abuse. Id. This evidence is admissible either to complete the story under Kennedy by showing the extent and the severity of the crime, or to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" under Rule 404(b). Fed. R. Evid. 404(b)(2).

**4.   The Government presented sufficient evidence at trial.**

Brizuela further contends that the Government did not present sufficient evidence to sustain its burden of proof at trial (Dkt. No. 411 at 9-10). Specifically, he contends that his appeal will establish there was insufficient evidence to show that the charged distributions were outside the bounds of professional medical practice and that he did so knowingly. Id. This argument is without merit.

The Fourth Circuit "will sustain a guilty verdict if there is substantial evidence to support it, drawing all reasonable inferences therefrom in favor of the prosecution." United States v. Lespier, 725 F.3d 437, 447 (4th Cir. 2013) (citation omitted). Here, Brizuela's argument falls woefully short of satisfying this high burden.

At trial, the Government presented medical charts, patient testimony, and expert witness testimony that each of the charged

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]**

distributions was beyond the bounds of professional medical practice (Dkt. No. 424 at 4 (citing exhibits)). It also introduced evidence that Brizuela knew he was distributing controlled substances, that he did so knowingly and voluntarily, and that these distributions were beyond the bounds of medical practice. For example, Brizuela provided written notice to all patients that, without exception, he would not continue prescribing controlled substances to patients who failed drug screens. <u>Id.</u> (citing exhibits). Yet, the overwhelming evidence at trial demonstrated that this ultimatum was never enforced. In addition, the Government introduced evidence that Brizuela violated various federal and state regulations, that he made false exculpatory statements to the WVBOM, and that he knew some of his patients were diverting, misusing, or abusing controlled substances. <u>Id.</u> (citing exhibits). In short, the Government's evidence in its case in chief, taken as a whole, was substantial and sufficient to sustain its burden of proof.

**5.    The Court's jury instructions did not affect Brizuela's substantial rights.**

Finally, Brizuela contends that one of the Court's jury instructions imposed a mandatory presumption that violated his due process rights by shifting the burden of proof from the Government

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]**

to the defense (Dkt. No. 411 at 10-12). Specifically, he challenges the Court's instruction that "[a]ssisting another in the maintenance of a drug habit is conduct that is not for legitimate medical purpose or outside the bounds of professional medical practice" (Dkt. Nos. 154 at 22, 411 at 10-12).

Brizuela did not object to this instruction (Dkt. No. 195 at 1341-56, 1501-15, 1563), and now he considers it in isolation. As the Government has noted in its response (Dkt. No. 424 at 5-7), when read in context, the challenged instruction does not create a mandatory presumption. Estelle v. McGuire, 502 U.S. 62, 72 (1991) ("It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."). Rather, "[t]his instruction was part of a larger instruction on what types of evidence 'may suggest' that a doctor has prescribed a controlled substance not for a legitimate medical purpose or outside the bounds of professional medical practice." Id. (quoting Dkt. No. 154 at 20).

After listing 12 examples or factors that may suggest a doctor has prescribed beyond the bounds of professional medical practice, the Court instructed the jury that "[i]t is solely for you, however, to decide whether the government has proved beyond a

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR BOND PENDING APPEAL [DKT. NO. 410]**

reasonable doubt that the defendant acted without a legitimate medical purpose or beyond the bounds of medical practice in prescribing the controlled substances as charged in Counts One through Twenty-One" (Dkt. No. 154 at 21). Thus, when read as a whole, the Court's jury instructions did not create a mandatory presumption or shift the burden of proof to Brizuela. Nor did they affect his substantial rights.

## IV. CONCLUSION

For the reasons discussed, the Court **DENIES** Brizuela's motion for bond pending appeal (Dkt. No. 410). However, the Court **STAYS** this decision, and Brizuela's self-report date, for **30 days** to allow him the opportunity either to appeal this Order or to refile his motion at the Fourth Circuit. If Brizuela does not seek relief from the Fourth Circuit, or if that court denies such relief, the Court **DIRECTS** Brizuela to self-report for service of his sentence to the institution designated by the Bureau of Prisons on or before **12:00 noon** on **Monday, December 2, 2019.**

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: November 1, 2019.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE